E. A. WEST v. AVERILL GROCERY COMPANY, Appellant.

**Corporations:** CONTRACT TO BUY ITS OWN STOCK. *Burden of proof on authority.* A corporation may, authority being sufficient, make an execut ry agreement to buy its own stock, and one attempt-
2 ing to avoid its contract for the purchase of its stock on the ground of *ultra vires* has the burden of showing that its articles of incorporation did not authorize it.

RATIFICATION OF AWARD BY. A corporation cannot claim an arbitration is invalid because agreement therefor was not authorized
·3 by the board of directors, it having ratified the agreement and award by making a payment at the time fixed thereby and insisted on action by the other party in accordance therewith

**Arbitration:** CONSTRUCTION OF AWARD. Action of arbitrators being
1 clearly designed and treated as an award should be given that
4 effect and not that of a mere recommendation that certain things be done.

COUNTER CLAIM ANTEDATING ARBITRATION. A counter claim to an
1 action on an award cannot be maintained, the cause of action set out therein having arisen before the agreement to arbitrate,
6 which provides that the finding of the arbitrators shall "constitute a final settlement." and having been included in the matters the arbirrators were to determine.

**Tender:** WAIVER. The fact that one does not have with him certificates of stock at the time of offering to deliver them, being
5 known to the other party, and objections not being made thereto, but refusal to accept them being absolute on the ground that there was no obligation to take them, a more formal tender is not necessary.

PRESUMPTION OF CONTINUANCE The record showing that plaintiff
7 produced in court, and tendered for delivery. certain stock it will be presumed, in the ab ence of anything to the contrary, that the tender continues.

**Instructions:** ERRONEOUS LIMITATIONS IN An instruction to find for plaintiff on an award of arbitrators, unless the jury found that plaintiff, at the time of the meeting of the arbitrators at a
8 certain date, secretly delivered a certain letter to the arbitrators with intent to influence them, is erroneous in limiting inquiry to such time, there being evidence that the letter was submitted to the arbitrators before such meeting.

CONFLICTING CHARGE. A charge that recovery may be had by plaintiff if there was an agreement to arbitrate and an award which the parties adopted and acted on and plaintiff offered and

was able to carry same out which defendant refused, is in conflict with another that the only question submitted is whether the arbitrators were fraudulently influenced and that unless the jury so find, the verdict should be for plaintiff.

SETTING OUT LONG PLEADINGS. The pleadings being very long and. one of the counts being withdrawn before submission, the jury should not have them submitted to them in the charge, and be left to find the issues therefrom, but they should be stated more concisely by the court.

*Appeal from Cedar Rapids Superior Court.*—HON. T. M.. GIBERSON, Judge.

MONDAY, OCTOBER 23, 1899.

ACTION at law on an award by arbitrators. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Rothrock & Grimm* for appellant.

*Chas. W. Kepler* and *Jamison & Smyth* for appellee.

ROBINSON, C. J.—The defendant is a private corporation organized for pecuniary profit. On the 10th day of December, 1895, A. T. Averill wrote to the plaintiff a letter, which contained the following: "I have concluded to make you the following proposition to take stock in the Averill Grocery Co.: You purchase $20,000 of said stock at par, $15,000 to be paid for on or before Feb. 1st. 1896; balance to be paid for in from six to ten months, with interest at the rate of 6 per cent. per annum from Feb. 1st, 1896. You to take charge of the sales department of the store, and to draw an annual salary of $2,000.00. The stock shall be invoiced on or about Feb. 1st, 1896, at cost in the store, and I will guarantee that the amount of same, plus good book accounts, after deducting accounts and bills payable and taxes 1895, shall equal $50,000, representing the $50,000 stock now issued. *  *  *" On the 13th day of the same month the plaintiff wrote a reply, which con-

tained the following: "Your favor of the 10th inst. is received, and I note the propositions contained therein are in accord with my understanding of the case as discussed with you in our recent interview. I take it that no arrangement could now be entered into which would cover a period of years, but will be for one year, and longer if everything is satisfactory to all concerned. I tender my resignation here today, and hope to be able to take up my work with your concern at least Feb. 1st, 1896." In March, 1896, the plaintiff purchased and paid for capital stock of the company of the par value of seven thousand dollars. He entered the service of the company, and continued therein until the next September, when he quit, on account of the state of his health. It was finally decided that he should withdraw from the company, and on the 3d day of December, 1896, an agreement in writing was entered into, a copy of which is as follows: "Whereas, the Averill Grocery Company and Mr. E. A. West are not able to agree as to a matter of settlement between themselves, they hereby agree that Mr. West shall select a man satisfactory to the Averill Groc. Co., and the Averill Groc. Co. a man that is satisfactory to Mr. West, who shall arbitrate the difference between them. If the two men so selected are unable to agree, they shall select a third one, and the majority agreement between the three shall be final. This arbitration is based upon the fact that the Averill Grocery Co. is willing to purchase the stock of said West upon his resigning his position with said company, and that the basis of this arbitration shall be a letter written to Mr. E. A. West by A. T. Averill on Dec. 10, 1895, and his reply of Dec. 13th, 1895, and a statement of the business for the eight months that he was active in the business of the company, and any other facts that may be introduced by Mr. West or the Averill Grocery Co. It is further agreed that the findings as made by said arbitration committee will be accepted by all parties to this contract, and that said find-

ings shall constitute a final settlement between the Averill Groc. Co. and E. A. West." Arbitrators were appointed, a hearing was had, and an award was made in writing as follows: "We, the undersigned, chosen as a committee of arbitration to determine condition for the complete settlement of all differences between the Averill Groc. Co. and E. A. West, recommend: *First.* That Mr. West's services to the Averill Groc. Co. and his salary therefor shall both be considered to have ceased under the date of Oct. 1st, 1896. *Second.* That on or before Jan. 15th, 1897, the Averill Grocery Co. shall accept from Mr. West his present holding of seventy shares of the company itself, and pay him for same, cash in hand, the sum of seven thousand dollars ($7,000.00)." The defendant paid to the plaintiff his salary according to the terms of the award, but has not paid for his stock, and for that the plaintiff seeks to recover. The answer alleges that the award, so far as it required the defendant to purchase the stock owned by the plaintiff, is void, and that the award should be disregarded, for the reason that the plaintiff, without the knowledge of the defendant, fraudulently produced to the arbitrators, for the purpose of influencing their action, letters and other papers. The defendant, by way of counter-claim, alleges that when the plaintiff made application to become a stockholder of the defendant, he represented that he was a man of large experience in the management of business like that in which the defendant was engaged, and would be of great service in building up and advancing the defendant's business; that the defendant relied upon the representations, and was induced thereby to enter into the contract of December, 1895; that the plaintiff was wholly incapable of performing the duties of the position which he undertook to fill; that he contracted to pay extravagant and unnecessary wages to incompetent traveling salesmen, and employed and kept in the service of the defendant many employes who were wholly unnecessary to the prosecution of its business; that

he purchased largely in excess of the demands of the trade, and purchased large quantities of goods which were not marketable; that the defendant sustained damages by reason of his false representations as to his ability and his failure in properly performing his contract as manager, and by reason of his failure to take thirteen thousand dollars of the twenty thousand dollars in stock, which he was required to take by the contract of December, 1895, in the sum of ten thousand dollars. Judgment for that amount is demanded. The verdict of the jury was for seven thousand dollars, with interest thereon from the 15th day of January, 1897, at the rate of 6 per cent. per annum.

I. The defendant claims that the agreement to arbitrate was void for the reason that it was in the nature of an executory contract by a corporation to purchase its own stock. There is a conflict of authority respecting the power of private corporations to make contracts for the purchase and surrender of their own capital stock, but it is the established rule in this state, that, if the articles of incorporation do not prohibit such contracts, and confer powers broad enough to include the right to make them, they may be valid. *Rollins v. Carriage Co.,* 80 Iowa, 380, 390; *Lumber Co. v. Foster,* 49 Iowa, 25. See *Coppin v. Greenlees & Ransom Co.,* 38 Ohio St. 275. The articles of incorporation of the defendant are not shown, and we cannot determine what powers they confer. The burden was on the defendant to sustain its averment that the agreement to arbitrate, so far as it contemplated a purchase of stock by the defendant, was not within the power conferred by the articles of incorporation; and it failed to do so. It is said that the agreement was not authorized by a meeting of the board of directors. It was agreed to by the owner of substantially all of the stock not held by the plaintiff, and, while that alone may not have been binding upon the defendant, yet it ratified the agreement and the award by paying the plaintiff his salary to the time fixed, and by insisting

upon his retiring ·from the position which he held; and that he did.   The defendant cannot now be heard to say that the arbitration was not valid.   It is claimed that the arbitrators merely recommended certain things to be done, and therefore that what they did should not be given the force of an award.   But it is clear that it was designed and treated as an award, and should be given that effect.   It is said that the award was void for the reason that the plaintiff wrongfully submitted to the arbitrators, without the knowledge of the defendant, a letter written in its behalf, November 17, 1896, which contained a statement to the effect that the business of the defendant was then on a paying basis.   This was a question for the jury to determine.

II.   The defendant contends that a tender of the stock was required before this action could be maintained, and that a sufficient tender has not been shown.   The award provides that "on or before January 15, 1897, the Averill Grocery Company shall accept from Mr. West his present holding of seventy shares of the stock of the company itself, and pay him for same, cash in hand, the sum of seven thousand dollars."   The petition alleges that when the plaintiff surrendered his position as an employe of the defendant it was verbally agreed that he should retain possession of his certificates of stock until the 15th day of January, 1897, and should then surrender them to A. T. Averill and Glenn M. Averill, and receive from them the sum of seven thousand dollars; that on the 15th day of January, 1897, the plaintiff tendered to the persons named, "and offered to deliver, the said 70 shares of stock in said Averill Grocery Company, and offered to duly assign same to them on the books of said company," and that the tender and offer were refused, and that payment for the stock was refused.   It is said that the tender should have been made to the defendant, and not to the Averills, but the petition alleges that by a verbal agreement the stock was to be surrendered to them, and the evi-

'dence tends to sustain that averment. Moreover, no objection to the sufficiency of the tender as pleaded was made in the superior court. It appears that the plaintiff did not produce the stock at the time the alleged tender was made. Some of it was held as security by a creditor, but all of it was in Cedar Rapids, where the transfer was to be made, and the part not in the actual possession of the plaintiff was subject to his order on the payment of the debt for which it was held, and the money to be paid by the defendant was to be used for that purpose.. The plaintiff stated to one of the Averills, who acted for both, the facts, but no objection was made to the omission to produce the certificates, and no request was made that they be produced at any designated place. On the contrary, Averill stated that there was no obligation to take the stock, and refused to take it. The award did not designate a place for its delivery, and, as no place was indicated by the defendant, the fact that the plaintiff did not have the certificates with him when he offered to deliver them is not controlling. The refusal of the defendant to receive them was absolute, and without reference to the place of delivery. The payment was, by the terms of the award, to be made at the time of the delivery, and, since the plaintiff had arranged to discharge his debt with the money when it should be paid, he had the power to perform his part of the award, and was relieved, by the unqualified refusal of the defendant to accept the certificates, from the duty of making a more formal tender. 25 Am. & Eng. Enc. Law, and note 2. See, also, *Steckel v. Standley,* 107 Iowa, 694.

III. The superior court directed a verdict for the plaintiff on the counterclaim of the defendant, and of that ruling the defendant complains. We think it was correct. The alleged cause of action set out in the counterclaim arose before the agreement to arbitrate was entered into, and was included in the matters in dispute which the arbitrators were required to determine. The findings

of the arbitrators were to "constitute a final settlement" between the plaintiff and the defendant.

IV.    The defendant claims that the plaintiff is not entitled to recover, because it is not shown that the tender has been kept good, and that the stock is ready for delivery. The record shows that the plaintiff produced in court, and tendered for delivery, the shares in controversy, and it is not shown that the tender has been withdrawn. We will presume that it continues.

V.    The court charged the jury as follows: "Unless the defendant has satisfied you by a preponderance of the evidence that the plaintiff did, at the time of the meeting of said arbitrators at the Grand Hotel in the city of Cedar Rapids, on or about December 10, 1896, secretly and clandestinely produce and deliver to the said arbitrators, with the intent to influence their action, and without the knowledge of the defendant, Averill Grocery Co., or its officers, a certain letter of date November 17, 1896, addressed to E. A. West, as in evidence before you, your verdict should be for the plaintiff. If the defendant has so satisfied you, then you verdict should be for the defendant." The defendant complains of this because it limits the inquiry of the jury to the meeting of the arbitrators at the Grand Hotel on or about December 10, 1896, and that, if it finds the letter was not delivered at that time, it should find for the plaintiff. There was evidence which tended to show that the letter was submitted to one or more of the arbitrators before the meeting referred to was held. Therefore, although the letter may have been improperly submitted as charged, yet, unless submitted on a particular date, the jury was instructed to find for the plaintiff. In that respect the charge was erroneous.

VI. In the second paragraph of the charge the jury was instructed that if the parties to this action entered into an agreement to arbitrate, and that there was an award, as alleged, and "that the said award or finding of the arbitrators

was accepted and adopted or acted upon by the plaintiff and defendant, Averill Grocery Co., and that on or about the 15th day of January, 1897, the plaintiff was ready and willing and offered to carry out said finding or award of said arbitrators, and the defendant failed and refused to take and pay for the same, then the plaintiff is entitled to recover in this case against the defendant. The fourth paragraph of the charge is as follows: "You are instructed that under the foregoing instructions the only question submitted for your consideration is the fact as to whether or not there was evidence submitted to the committee with fraudulent intent to deceive and influence their finding. If you so find, your verdict will be for the defendant; otherwise, your verdict will be for the plaintiff." The defendant complains that the fourth paragraph is in conflict with the second, and that is true

VII. In the charge to the jury the petition and answer were copied at length. They cover nearly fourteen printed pages. The petition originally contained two counts, but the second one was withdrawn before the cause was submitted to the jury. Nevertheless it was copied in the charge, and the jury was was required to ascertain as best it could the issues on which the case was tried. This was confusing, and erroneous. The statements contained in the pleadings were lengthy, and the real issues should have been stated more concisely, and in the language of the court. For the errors pointed out the judgment of the superior court IS REVERSED.